**COMPANY AGREEMENT**

**OF**

**2965 ALLIANCE INVESTMENT FUND, LLC**

**a Texas Limited Liability Company**

This Company Agreement of 2965 Alliance Investment Fund, LLC ("**Agreement**"), is executed to be effective as of August 28, 2024, by Rick Saga (the "**Manager**", "**Member**" or "**Sole Managing Member**"), which member does hereby form a limited liability company pursuant to and in accordance with the Texas Limited Liability Company Act, upon the following terms and conditions:

1. **Name.**  The name of the limited liability company formed hereby is 2965 Alliance Investment Fund, LLC (the "**Company**").

2. **Purpose.**  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the TX ACT.

3. **Registered Agent.**  The address of the registered office of the Company shall be as set forth in the Certificate of Formation and as of the date of this Agreement is c/o Smit Shah, 4940 N Tarrant Parkway, Fort Worth, TX 76244

4. **Registered Office.**  The name and address of the registered office of the Company is 5580 W Desert Inn Road, Las Vegas, TX 89146

5. **Member.**  The name of the Member is as set forth above in the preamble to this Agreement. The address of the Member is 5580 W Desert Inn Road, Las Vegas, TX 89146.

6. **Management and Control.**  The Member may appoint one or more managers (individually a "**Manager**" and collectively,  the "**Managers**").  The Managers shall serve at the pleasure of the Member, and the Member may remove any person as a Manager and/or appoint additional persons as Managers, as such Member deems necessary or desirable.  The initial Manager is Rick Saga.  The business and affairs of the Company shall be managed by, and the management of the Company is fully reserved to the Managers.  The Managers shall have the power to do any and all acts necessary or convenient to or in the furtherance of the purposes described herein and shall have and may exercise all of the powers and rights conferred upon managers of a limited liability company formed pursuant to the DE ACT. The Managers are authorized to execute documents on behalf of the Company and to take actions on behalf of the Company.  Each Manager shall have one vote.  A majority of the Managers then in office shall constitute a quorum for the taking of action by the Managers.  All actions of the Managers shall be taken upon a majority vote of a quorum, or by written consent as provided herein.

7. **Officers**.  The Managers may appoint one or more officers of the Company (each, an "**Officer**"), including, without limitation, a President, a Chief Executive Officer, a Chief Operating Officer, a Secretary, a Treasurer, one or more Vice Presidents, and one or more Assistant Secretaries, Assistant Treasurers, and Assistant Vice Presidents.  Any two or more offices may be held by the same person. Each such Officer may have delegated to him or her the authority and power to execute and deliver on behalf of the Company (and to cause the Company to perform) any and all such contracts, certificates, agreements, instruments, and other documents, and to take any such action, as the Managers deem

necessary or appropriate, all as may be set forth in a written delegation of authority executed by the Managers. The Officers shall serve at the pleasure of the Managers, and the Managers may remove any person as an Officer and/or appoint additional persons as Officers, as the Managers deem necessary or desirable. Any Officers shall serve in their appointed capacities without compensation, unless otherwise provided by the Managers in a written consent in their absolute discretion. Any Officer may resign at any time by giving written notice of such resignation to the Managers. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Managers and the acceptance of such resignation shall not be necessary to make it effective. Any person, entity or other organization dealing with the Company may conclusively presume that an Officer specified in such a written delegation of authority who executes a contract, certificate, agreement, instrument or other document on behalf of the Company has the full power and authority to do so and each such document shall, for all purposes, be duly authorized, executed, and delivered by the Company upon execution and delivery by such Officer. The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Managers are agents of the Company for the purpose of conducting the business and affairs of the Company, and the actions of any Officer taken in accordance with such powers shall bind the Company and any third party dealing with such Officer shall be entitled to rely conclusively (without making inquiry of any kind) on any actions so taken as being properly authorized by the Company.

The following individuals are appointed as officers of the Company, with the powers enumerated adjacent to their name as set forth below (provided, however, that the title and authority granted to such persons shall automatically terminate on the date such person is no longer employed by the Company or an affiliate thereof):

| Name | Title |
|------|-------|
| Rick Saga | Vice President |

Each of the officers of the Company listed above may conduct business operations of the Company and perform his or her function in the name of such foregoing officer title or as an "Authorized Signatory."

8. **Winding Up.** The Company shall begin to wind up its affairs upon the happening of the first to occur of the following events: (a) the written consent of the Member, (b) the bankruptcy or death of the Member or the occurrence of any other event that terminates the continued membership of the Member in the Company, or (c) the entry of a decree of judicial order to wind up the Company under the DE ACT. Upon completion of the winding up process, the Company shall file a Certificate of Termination.

9. **No Partnership.** It is intended that the Company not be treated as or construed to be a partnership (including a limited partnership) or joint venture for purposes of the laws of any state, and this Agreement may not be construed to suggest otherwise.

10. **Capital Contributions and Capital Accounts.** The Member shall make capital contributions to the Company only if, when, and to the extent it agrees in writing to do so. At all times that the Company is disregarded as an entity separate from its owner pursuant to Treasury Regulations

§301.7701-3(b)(1)(ii), the Company shall not be required to establish or maintain capital accounts. At all other times, the Company shall establish and maintain a capital account for each member in accordance with Treasury Regulation 1.704-1(b)(2)(iv) and 1.704-2, and such capital accounts shall control the division of assets upon liquidation of the Company. A deficit capital account of a member shall not be deemed to be a liability of the member, and no member shall have any obligation to the Company or any other member for any deficit balance in such member's capital account.

11. **Allocation of Profits and Losses.** The Company's profits and losses shall be allocated to the Member.

12. **Distributions.** Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

13. **Admission of Additional Members.** One or more additional members of the Company may be admitted to the Company with the consent of the Member.

14. **Limited Liability.** Except as otherwise provided by the TX ACT, the debts, obligations, and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations, and liabilities of the Company. The Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

15. **Governing Law.** This Agreement shall be governed by, and construed under, the laws of the State of Texas, all rights and remedies being governed by said laws, without regard to principles of conflict of law.

16. **Amendments.** This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

17. **Indemnification of Indemnified Persons.** To the fullest extent permitted by applicable law, in the event that any member, manager, officer, or any of their direct or indirect partners, members, trustees, directors, officers, shareholders, employees, incorporators, agents, affiliates or controlling persons (collectively, the "**Indemnified Persons**"; each, including the Member, the Managers, and any Officer, an "**Indemnified Person**"), becomes involved, in any capacity, in any threatened, pending or completed action, proceeding or investigation, in connection with any matter arising out of or relating to the Company's business or affairs, the Company will periodically reimburse such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith, provided that such Indemnified Person shall promptly repay to the Company the amount of any such reimbursed expenses paid to it if it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified by the Company in connection with such action, proceeding or investigation as provided in the exception contained in the next succeeding sentence. To the fullest extent permitted under the law of the State of Texas as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide broader indemnification rights than said law permitted the Company to provide prior to such amendment), the Company also will indemnify and hold harmless an Indemnified Person against any losses, claims, damages, liabilities, obligations, penalties, actions, judgments, suits, proceedings, costs, expenses, and disbursements of any kind or nature whatsoever (collectively, "**Costs**"), to which such an Indemnified Person may become subject in connection with any matter arising out of or in connection with the Company's business or affairs **INCLUDING, IN EACH CASE, FOR CLAIMS BASED ON OR ARISING FROM SUCH PERSON'S SOLE, PARTIAL, OR CONCURRENT NEGLIGENCE,**

but excluding any such Costs to the extent that they result solely from the willful misfeasance, gross negligence or bad faith of such Indemnified Person. If for any reason (other than the willful misfeasance, gross negligence, or bad faith of such Indemnified Person) the foregoing indemnification is unavailable to such Indemnified Person, or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such Costs in such proportion as is appropriate to reflect not only the relative benefits received by the Company on the one hand and such Indemnified Person on the other hand but also the relative fault of the Company and such Indemnified Person, as well as any relevant equitable considerations. The reimbursement, indemnity, and contribution obligations of the Company under this <u>Section 17</u> shall be in addition to any liability which the Company may otherwise have to any Indemnified Person and shall be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of the Company and any Indemnified Person. The reimbursement, indemnity and contribution obligations of the Company under this <u>Section 17</u> shall be limited to the Company's assets, and no member or manager shall have any personal liability on account thereof. Any amendment or repeal of this <u>Section 17</u> shall not adversely affect any right or protection existing hereunder immediately prior to such amendment or repeal. The foregoing provisions shall survive any termination of this Agreement.

18. **Exculpation.** Notwithstanding any other terms of this Agreement, whether express or implied, or obligation or duty at law or in equity, no Indemnified Person shall be liable to the Company or any member or manager for any act or omission (in relation to the Company, this Agreement, any related document or any transaction contemplated hereby or thereby) taken or omitted by an Indemnified Person in the belief that such act or omission is in or is not contrary to the best interests of the Company and is within the scope of authority granted to such Indemnified Person by this Agreement, provided that such act or omission does not constitute willful misfeasance, gross negligence or bad faith of such Indemnified Person.

19. **Tax Matters Partner**. The Member shall be the tax matters partner of the Company and, in such capacity, shall exercise all rights conferred, and perform all duties imposed, upon a tax matters partner under Sections 6221 through 6233 of the Code and the regulations promulgated thereunder. Effective as of December 31, 2017, (i) the Manager shall have discretion to remove the "partnership representative" at any time and designate a new "partnership representative" to replace the former "partnership representative," and (ii) the Company may elect to apply Code Section 6226 with respect to an imputed underpayment in accordance with applicable Treasury Regulations. The "partnership representative" shall take any necessary action to ensure the foregoing rights for the Members.

**[The remainder of this page is intentionally left blank.]**

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date set forth below to be effective as of the date first above written.

**SOLE MANAGING MEMBER:**

Rick Saga